IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN SMITH, on behalf of himself, individually, and on behalf of all others similarly situated,<br>      Plaintiff,<br><br>v.<br><br>ADVINTIST MIDWEST HEALTH, an Illinois corporation, d/b/a ADVENTIST HEALTH CARE AT HOME<br>      Defendant. | 16 C 7606<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Ryan Smith ("Smith") brings this action against Defendant Adventist Midwest Health d/b/a Adventist Health Care at Home ("Adventist") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.* Smith seeks damages on behalf of himself and other individuals similarly situated for the alleged failure of Adventist to pay home healthcare clinicians overtime wages for worked performed in excess of 40 hours per week. This matter is referred to this Court for a report and recommendation on Plaintiff's Revised Motion for Rule 23 Class Certification and Certification Under Section 216(b) [ECF No. 89]. For the reasons discussed below, the Court recommends that Plaintiffs' Motion should be granted.

### I. BACKGROUND

**A. Adventist and its Pay Structure**

Plaintiff Smith worked for Defendant Adventist as a home health registered nurse from July 2013 through February 2016. As a home health care nurse, Smith, along with other nurses, occupational therapists, physical therapists, and speech pathologists (collectively, "Clinicians"),

1

provided health care services to patients in their homes. Generally, Adventist pays all full-time Clinicians based on a "salary-plus" plan pursuant to 29 CFR 541.604(b), which provides that Clinicians are paid a set salary and are entitled to additional compensation above that set salary based on additional work performed. Any additional compensation is based upon a Clinician's hourly rate, which is established at the time the Clinician is hired. This hourly rate is used to determine each Clinician's weighted visit equivalent ("WVE") based on the premise that a standard routine home visit is expected to take 80 minutes of work, which equates to 1.33 times the Clinician's hourly rate. The WVE rate is intended to compensate Clinicians for all tasks involved in a patient visit, including travel to and from the patient's home, preparation for the visit, documentation and paper work related to the visit, and all telephone class, email and voicemails with other medical provides for coordination of care. In addition to patient visits, Adventist also pays Clinicians for attending staff meetings, one-on-one case reviews, case conferences and in-service training sessions.

Adventist classifies all full-time Clinicians as exempt from the FLSA and the IMWL for purposes of overtime, which was a decision made at the corporate level that applies to all Clinicians. Because Clinicians are classified as exempt, Adventist does not maintain a timekeeping system and does not monitor the number of hours Clinicians actually work each week. Clinicians document their time spent during patient visits in the McKesson system, which is an electronic medical record, not a timekeeping record or system. Any time that Clinicians spend outside of actual patient visits, including completing a patient's medical charting, communicating and coordinating care with doctors and other health care providers, traveling between visits, and any other work performed in conjunction with a patient's care that was not completed while at the patient's home, is not recorded. In addition to the McKesson system, the

Clinicians' supervisors and Adventist's Quality Improvement personnel are responsible for logging time Clinicians spend in staff meeting, one-on-one case reviews, in-service training and other non-patient visit work that is paid on an hourly basis which then is entered into the payroll system.

**B. Smith's Personal History**

The time frame at issue in this lawsuit is July 27, 2013, to the present. From July 2013 through February 2016, Smith worked full-time as a home healthcare nurse for Adventist. While he was employed by Adventist, Smith also worked in a full-time position as a home healthcare nurse for Girling/Kindred Home Health and part-time with ATI Summit Home Health. From July 2013 through February 2016, Smith worked full-time as a nurse for both Adventist and Girling caring for patients in their homes. Beginning in November 2015 through at least March 2017, Smith was employed part-time by ATI as nurse/case manager. As with Adventist, Smith recorded his time with patients and was required to keep track of his patient visits at both Girling and ATI.

It is undisputed that Smith's timekeeping records are not accurate. There also is significant overlap between Smith's Adventist time records for patient visits and the records of his patient visits for his other employers. On multiple occasions, it appears Smith recorded he was with an Adventist patient in his Adventist timekeeping records at the same time he recorded in his Girling records that he was visiting a Girling patient. In other words, Adventist argues that Smith's time records, on their face, appear to show that he was in two places treating two different patients at the same time. Based on these time records and Smith's employment with multiple employers during the relevant time period, Adventist argues that Smith's claim is not typical of the claims of other purported class members and that he is not an adequate class

representative because he will face significant challenges to his credibility and Adventist will have unique defenses to Smith's claim. These arguments will be addressed below.

### C. The Lawsuit

In July 2016, Smith filed this lawsuit alleging violations of the FLSA, 29 U.S.C. § 201, *et seq.*, and the IMWL, 820 ILCS § 105/1, *et seq.* Smith argues that Adventist misclassified Clinicians as exempt and failed to pay them for hours actually worked in excess of 40 hours in a workweek in violation of the IMWL and the FLSA.

Smith seeks to certify his IMWL overtime claim as a class action under Federal Rule of Civil Procedure 23(b)(3) or, in the alternative, Federal Rule 23(c)(4). Smith asserts that he is "similarly situated" to all other Clinicians who would be putative class members and that he would be an adequate representative for their claims. The proposed class is:

> All individuals employed by the Defendant as Clinicians during the period July 27, 2013 to the date of judgment in this action, who were classified as exempt and who were not paid overtime compensation for time worked in excess of forty (40) [hours] in given workweeks.

Plaintiff's Revised Motion [ECF No. 89, at 8].

In addition, Plaintiff seeks to certify his FLSA overtime claim as a collective action under 29 U.S.C. § 216(b). Plaintiff's proposed class for the collective action is:

> All individuals employed by the Defendant as Clinicians during the period from three years prior to the entry of the Court's order certifying the collective action to the date of judgment in this action, who were classified as exempt and who were not paid overtime compensation for time worked in excess of forty (40) [hours] in given workweeks.

Plaintiff's Revised Motion [ECF No. 89, at 8].

## II. LEGAL STANDARD

Smith seeks to certify his IMWL claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) contains four prerequisites for class certification:

4

(1) numerosity; (2) commonality, (3) typicality; and (4) adequate representation. *See* FED. R. CIV. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"), 594 U.S. 338, 349 (2011); *Harper v. Sheriff of Cook Co.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "'Failure to meet any of the Rule's requirements precludes class certification.'" *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). The decision to certify a class action rests within the discretion of the district court. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997).

A plaintiff bears the burden of showing that class certification is proper. *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). "A party seeking class certification must affirmatively demonstrate his compliance with th[e] Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. But the showing need not be "to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The trial court possesses broad discretion in determining whether that burden is met. *Starr v. Chicago Cut Steakhouse, LLC*, 2014 WL 7146061, at *7 (N.D. Ill. Dec. 15, 2014).

If the moving party meets this initial burden, he also must show that the requirements of Rule 23(b) are satisfied. *See Oshana*, 5472 F, 3d at 513. In this case in which Smith seeks to certify a Rule 23(b)(3) class, this means that he must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fair and efficient adjudication of the controversy [superiority]." FED. R. CIV. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Oshana*, 472 F.3d at 513.

5

Smith also seeks to certify his FLSA claim as a collective action under Section 216(b). Under the FLSA, an employee may bring an action on his or her own behalf and for all others "similarly situated." 29 U.S.C. § 216(b). A collective action under Section 216(b) differs from a class action under Rule 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under Section 216(b) collective action only if they opt into the action by providing their written consent. *Sanchez v. Roka Akor Chicago LLC*, 2016 WL 74668, at *5 (N.D. Ill. Jan. 7, 2016).

Courts in this district employ a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. *Id.* At step one, the court decides whether to conditionally certify a collective action. *Smith v. Family Video Movie Club, Inc.*, 2015 WL 1542649, at *2 (N.D. Ill. Mar. 31, 2015). At the second step, which takes place following discovery, the analysis is more rigid and requires the court to consider: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns. *Sanchez*, 2016 WL 74668, at *5 (internal quotation omitted).

Though FLSA collective actions and Rule 23 class actions differ, "the case law has largely merged the standards" for certification. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Thus, in deciding whether to certify a collective action and a class action in one lawsuit, "the court treats them as 'a single class action' and applies 'the Rule 23 standards.'" *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1012-13 (N.D. Ill. 2016) (quoting *Sanchez*, 2016 WL 74668, at *5); *cf. Lukas v. Advocate Health Care Network and Subsidiaries*, 2015 WL 5006019, at *8 (N. D. Ill. Aug. 18, 2004) (finding that because the

class meets the Rule 23 standards for class certification, "it necessarily meets the much lower bar for FLSA collective action certification"). This Court routinely certifies wage and hour claims under both Rule 23 and Section 216(b) of the FLSA.[1]

### III. ANALYSIS

#### A. The Proposed Class Satisfies the Numerosity Requirement

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that putative class members be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Although there is no absolute threshold number, numerosity generally is satisfied by identifying a class containing at least 40 members. *See, e.g., McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643–44 (N.D. Ill. 2002); *cf. Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006). Adventist's Rule 30(b)(6) representative testified that Adventist presently employs approximately 40 full-time Clinicians and has employed additional Clinicians throughout the three-year class period. Smith asserts there are 66 putative class members, and Adventist does not dispute this. Accordingly, Plaintiff's proposed class is sufficiently numerous and ascertainable to satisfy Rule 23(a)(1).

#### B. The Proposed Class Satisfies the Commonality Requirement

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that "questions of law or fact common to the class" exist. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Id.* For certification under Rule 23 to be proper, there must be a common issue that, when decided on the merits, "will resolve an

---

[1] *See, e.g., Balderrama-Baca v. Clarence Davids and Co.,* 2017 WL 951385, at *3 (N.D. Ill. Mar. 10, 2017); *Pietrzycki,* 197 F. Supp. 3d at 1011; *Sanchez,* 2016 WL 74668 at *1; *Lukas,* 2015 WL 5006019, at *1; *Wilkins v. Just Energy Group, Inc.,* 308 F.R.D. 170, 190 (N.D. Ill. 2015); *Starr,* 2014 WL 7146061 at *1; *Gomez v. PNC Bank, Nat'l Ass'n,* 2014 WL 3640798, at *8 (N.D. Ill. July 24, 2014); *Kurgan v. Chiro One Wellness Ctrs. LLC,* 2014 WL 642092, at *1 (N.D. Ill. Feb. 19, 2014).

issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Notwithstanding some of the issues discussed below with regard to Adventist's arguments that Smith's claims are not typical or that he is not an adequate class representative, there is little doubt that a common issue is presented in this case —namely, whether it is lawful based on Adventist's salary-plus pay structure for Adventist to classify Clinicians as exempt under the FLSA and IMWL. It is not disputed that Adventist made a decision at the corporate level to uniformly classify all Clinicians as exempt, and that all Clinicians were subject to identical pay structure based on a per-patient visit compensation schedule with other tasks being paid on an hourly basis. Given that all Clinicians share essentially the same compensation structure and are classified as exempt, the question of whether their exemption is legal constitutes a common issue across the putative class. Other courts in this district have recognized that when "employees claim they were wrongfully classified as exempt from overtime pay, the legality *vel non* of an employer's exemption policy constitutes a common question sufficient to justify class certification." *Lukas*, 2015 WL 50006019, at *5 (citing *Wilkins v. Just Energy Grp., Inc.*, 2015 WL 1234738, at *11 (N.D. Ill. Mar. 13, 2015) (finding commonality requirement satisfied when the employer "uniformly treated its door-to-door workers as outside the scope of the IMWL" and therefore did not pay them overtime); *Kurgan v. Chiro One Wellness Centers LLC*, 2014 WL 642092, at *4 (N.D. Ill. Feb. 19, 2014) (finding that commonality is satisfied when an employer's "failure to pay overtime and track hours of work resulted from a uniform, official, corporate policy of treating [employees] as exempt…. The legality of this uniform policy is the focus of this litigation.")).

For these reasons, the question whether Adventist's policy of classifying Clinicians as exempt from overtime is lawful under the IMWL and FLSA is a sufficient common issue to satisfy the commonality requirement of Rule 23(a)(2).

**C. Smith Has Established His Claim is Typical of the Proposed Class**

Typicality is closely related to commonality. *Keele,* 149 F.3d at 594. It requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000)). This means the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana,* 472 F.3d at 514 (quoting *Rosario,* 963 F.2d at 1018).

Smith argues that his claims are typical of the claims of the other class members because they arise from the same course of action by Adventist. Adventist, however, asserts that Smith's claims are not typical of other class members because his concurrent employment with other employers and questions about his credibility differentiate him from other members of the purported class. Adventist argues that the unique issues with regard to Smith's employment and unpaid wage claim would overshadow any issues common to the class and negatively impact claims of other Clinicians.

Without a doubt, Smith will be cross-examined about his records and evidence of his employment with other employers. Adventist will argue he is not credible because his time records show he was in two different places at the same time. This testimony will be relevant to the question of whether Smith suffered any damages and, if so, the amount of those damages. It is not necessarily relevant to the question of whether Adventist's salary-plus pay structure is

9

legal. It is the latter issue, common to all class members, that establishes that Smith's claim is typical of the class. Questions about Smith's credibility concerning the amount of time or overtime he worked for Adventist does not undercut the fact that there is a common company policy that affects all class members, including Smith. Smith's claim in this respect is typical of other class members and questions about his credibility do not render his challenge to the salary-plus pay structure atypical. Therefore, the Court finds that Smith satisfies the Rule 23(a)(3) typicality requirement.

### D. Smith Is an Adequate Class Representative

Rule 23(a)(4) requires that the named plaintiff and class counsel "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). On this question, courts look to "the adequacy of the named plaintiff[] as representative[] of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). The adequacy and typicality requirements "tend[ ] to merge." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) (internal quotation marks omitted). The Seventh Circuit has concluded, for example, that conflicts of interest can counsel against a finding of adequacy. *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012).

Adventist argues that Smith is not an adequate class representative because Smith is not credible and Adventist has unique defenses to Smith's claims. Relying on *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011), Adventist argues that a class representative with serious credibility problems may not be an adequate class representative. As discussed above, Adventist argues that Smith's personal job history with multiple employers conflicts with and is antagonistic to the interests of absent class members. Adventist also relies

heavily on Smith's inaccurate timekeeping records as evidence that Smith has a propensity for not being truthful which would make him an inadequate class representative.

This is a close call. Clearly, Smith likely will have hurdles to overcome that other Clinicians may not have to face on the road to proving he worked overtime hours that were not compensated as such. These hurdles, however, do not necessarily impact or interfere with the Court's ability to determine as a matter of law whether Adventist's decision to classify Clinicians as exempt from overtime and its pay structure was legal. As discussed above, the unique aspects of Smith's claims arise primarily at the damages phase of the case and should not impact materially a decision as to liability on a class wide basis. One might question whether Smith is the best possible class representative in light of the credibility challenges he will face, but someone can be an adequate class representative without being the best or a perfect representative.

Adventist argues that *CE Design Ltd. v. King Architectural Metals, Inc.* is directly on point. The Court disagrees. In that case, the named plaintiff claimed that he was not aware that providing his company's fax number to a directory (in that case the *Blue Book*) could have authorized a business, such as the defendant, to send to his company advertisements by fax. *CE Design*, 637 F.3d at 724. Authorization or consent is a critical defense to liability in litigation involving fax advertising. *Id.* The Seventh Circuit explained that the named plaintiff's testimony that he was not aware of the consequences of his actions was difficult to credit and could be construed as the plaintiff being less than candid about his actions if the fact finder did not believe him. *Id.* at 726. The Seventh Circuit found that the named plaintiff's lack of credibility would negatively impact class members and that plaintiff's lack of truthfulness in that case was

11

material, and class certification should have been denied given the inadequacy of the named plaintiff. *Id.* at 727.

*CE Design*, however, is distinguishable from this case because the defendant's consent defense (to which the named plaintiff's testimony was critical) went directly to liability and other class members may not be subject to the same defense or any defense at all. In *CE Design*, consent could have been an issue that was different for each class member. That is not the case here. In this case, the question of whether Adventist properly classified Clinicians, including Smith, as exempt and did not pay overtime is a question that can be decided once on a class-wide basis. Smith's credibility or lack thereof should not materially impact a decision on that issue.

Although Smith's credibility may be relevant to the amount of damages he suffered, if any, as a consequence of Adventist's common policy or practice, the Court is not convinced that he cannot adequately represent the class in this case because he will face an individualized challenge on that issue. Smith contends he will be able to show he worked at least some overtime hours for Adventist during certain weeks that were not compensated as such. Adventist will challenge the credibility of that claim as it no doubt will challenge the damage claims of absent class members if the case proceeds to that point. That Smith will be subject to challenge on the amount of damages he suffered, however, does not destroy his ability to serve as an adequate class representative on the common liability issues presented in this case. Therefore, the Court finds that Smith is an adequate representative for the proposed class in this case. Adventist does not challenge the adequacy of class counsel in this case, and the Court is not aware of any reason counsel would not adequate represent Smith and the other class members. For these reasons, the Court finds that Smith and class counsel will adequately protect the interests of the class in this case.

### E. The Proposed Class Satisfies the "Predominance" Requirement of Federal Rule 23(b)(3)

A proposed class action must satisfy the four requirements of Rule 23(a) and also must satisfy one of the requirements of Rule 23(b). Here the proposed class satisfies the requirement of Rule 23(b)((3) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This requirement goes to the efficiency of a class action as an alternative to individual suits and tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623. The predominance requirement is met if a plaintiff can show that "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quoting 7AA Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed.2011)).

As noted above, the common issue of whether Adventist's exemption policy for Clinicians is legal is critically important to resolving this litigation. Whether Adventist's salary-plus pay structure renders an employee ineligible for exemption from the IMWL and FLSA overtime provisions is a common issue underlying the claims of all class members. It also is dispositive. If the IMWL and/or the FLSA permit employees to be classified as exempt under Adventist's pay structure, then no IMWL or FLSA violation has occurred and no class member is entitled to damages. If, on the other hand, the exemption policy violates the IMWL and/or the FLSA, then all Clinicians were classified wrongfully as exempt and any Clinician who worked over 40 hours in a given week is entitled to damages in the amount of his or her unpaid overtime. Resolution of this common question—which is identical for all class members—will settle entirely the question of liability in this case.

Adventist, however, argues that because many Clinicians did not receive hourly pay *every week* and did not work over 40 hours *every week*, individualized issues will overshadow the common issues, and the Court will be forced to do a week-by-week analysis of each class member's claims. Without a doubt, Adventist is correct that determining the damages owed to each individual class member likely will be a complicated exercise, not the least because some, if not all of the Clinicians, may not have completely accurate time records. Without accurate timekeeping, it may prove difficult to determine how much overtime, if any, each class member actually worked. These individualized issues, however, go only to each class member's recoverable damages and not to the common question of liability—and individualized damages determinations generally do not defeat predominance for class certification purposes. *See Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."); *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) (holding that the "need for individual damages determinations does not, in and of itself, require denial of [plaintiff's] motion for certification."); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (noting that "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate"), *aff'd*, 545 U.S. 546 (2005).

Here, Smith's theory is that Adventist unlawfully classified Clinicians as exempt from the overtime requirements of the IMWL and FLSA and, therefore, withheld overtime pay to which Clinicians otherwise would be entitled. Even though litigating damages may be time consuming and complex, it does not alter the fact that the central question in this case regarding Adventist's pay structure and exemption policy can be decided for all Clinicians in one fell

swoop. Moreover, if Adventist is found to have violated the IMWL and/or the FLSA by wrongfully classifying Clinicians as non-exempt, there also will be a question as to whether Adventist violated provisions of the IMWL and the FLSA requiring accurate recordkeeping of non-exempt employees' work hours. *See* 29 U.S.C.A. § 211(c); 820 ILCS § 105/8. When a company does not keep accurate records of its non-exempt employees' hourly work, the employees enjoy a relaxed standard of proof in establishing damages. *See Driver v. AppleIllinois, LLC,* 2012 WL 689169, at *3 (N.D. Ill. Mar. 2, 2012) (permitting relaxed standard of proof for damages, because "[a]lthough the employees bear the initial burden of showing that they worked hours for which they were not properly paid, it is the employer's duty to keep proper records"). Therefore, if the parties reach the damages stage in this case, class members may benefit from a lower burden of proof when establishing their damages which may make individual damage determinations less complicated. In any event, at this time, there is no reason to believe that the damages stage of this litigation will be unmanageable compared to other wage and hour class actions.

Accordingly, the common issue of whether Clinicians were classified wrongfully as exempt predominates over individualized damages determinations. Although the damages questions for members of the class may vary, the liability determination is best adjudicated once, within a class action structure. A class action, therefore, is superior to individual cases filed by each class member, during which the legality of Adventist's pay scheme would be re-litigated over and over again. For these reasons, the requirements of Rule 23(b)(3) are met, and class certification is proper.

## IV. CONCLUSION

For all of the reasons discussed in this report and recommendation, this Court finds that Smith has demonstrated that he satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and recommends that his IMWL claim be certified as a class action. Because Smith's proposed IMWL class meets the standards for class certification under Rule 23, the Court finds that his FLSA claim necessarily satisfies the lower bar for certification as a collective action under Section 216(b) and also should be certified as a collective action under the FLSA. Accordingly, the Court recommends that Plaintiff's Revised Motion for Rule 23 Class Certification and Certification Under Section 216(b) [ECF No. 89] be granted.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. FED. R. CIV. P. 72. Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 17, 2017