**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RYAN SMITH, on behalf of himself, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16 C 7606 |
| ADVENTIST MIDWEST HEALTH, an Illinois nonprofit corporation, d/b/a ADVENTIST HEALTH CARE AT HOME, | ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant filed objections to Magistrate Judge Gilbert's Report and Recommendation of November 17, 2017, which addressed plaintiff's revised motion for certification of a class and a collective action. The Court sustains defendant's objections in part; sets aside in part and adopts in part the Report and Recommendation [114]; and denies plaintiff's motion [89].

## BACKGROUND

Ryan Smith brought this action against Adventist Midwest Health ("Adventist") under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), to recover allegedly unpaid overtime wages on behalf of himself and all similarly-situated individuals. Smith worked for Adventist as a home health care nurse and seeks to represent other nurses as well as occupational therapists, physical therapists, and speech pathologists (collectively, "Clinicians") who are or were employed by Adventist and classified as exempt employees and who worked more than forty hours per week.

Smith moved for certification of his IMWL claim as a class action under Federal Rule of Civil Procedure 23 and for certification of an FLSA collective action under 29 U.S.C. § 216(b).[1] The Court referred plaintiff's revised motion to Magistrate Judge Gilbert for a Report and Recommendation. Judge Gilbert issued a Report and Recommendation recommending that this Court grant plaintiff's motion. Adventist filed objections to the Report and Recommendation as provided by Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1).

## DISCUSSION

**A.     Legal Standards**

**1.     Standard of Review**

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with respect to any contested matter."• *Kanter v. C.I.R.*, 590 F.3d 410, 416 (7th Cir. 2009) (quoting 28 U.S.C. § 636(b)(1)). The Court of Appeals has observed:

> *De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge . . . while still engaging in an independent decision-making process.

---

[1] Plaintiff proposes the following class: "All individuals employed by the Defendant as Clinicians during the period July 27, 2013 to the date of judgment in this action, who were classified as exempt and who were not paid overtime compensation for time worked in excess of forty (40) [hours] in given workweeks." Plaintiff proposes the following collective: "All individuals employed by the Defendant as Clinicians during the period from three years prior to the entry of the Court's order certifying the collective action to the date of judgment in this action, who were classified as exempt and who were not paid overtime compensation for time worked in excess of forty (40) [hours] in given workweeks." (ECF No. 89, Pl.'s Revised Mot. at 8.)

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The district judge makes the ultimate decision to adopt, reject, or modify the recommended disposition. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). When no objection is made to a portion of a report and recommendation, the district court reviews the unobjected portion for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

  2.  **Class-Action and Collective-Action Standards**

To be certified, a proposed class must satisfy each requirement of Rule 23(a) as well as one of the three requirements of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Rule 23(a) requirements are numerosity, typicality, commonality, and adequacy of representation. *Id.* After those four requirements are satisfied, proponents of the class seeking certification under Rule 23(b)(3)—the provision on which plaintiff relies here—must also show that (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) a class action is superior to other available methods of resolving the dispute. *Id.* Plaintiff bears the burden of showing by a preponderance of the evidence that a proposed class satisfies the Rule 23 requirements. *See id.*

In this district, FLSA collective actions generally proceed under a two-step process. *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017). First, the court considers whether to conditionally certify a class; to obtain this relief, a plaintiff must make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Gomez v. PNC Bank, Nat'l Ass'n*, 306 F.R.D. 156, 173 (N.D. Ill. 2014). If the plaintiff meets this burden, the court conditionally certifies the

3

case as a collective action and allows the plaintiff to send notice of the case to similarly-situated employees, who may then opt in as plaintiffs. *Nicks*, 265 F. Supp. 3d at 849. At the second step, which is not at issue here and occurs after the opt-in and discovery process is complete, the court reevaluates certification using a more stringent standard. *Id.*

Case law has "largely merged the standards" for certifying Rule 23 class actions and FLSA collective actions. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Because neither party asserts that the requirements for certifying a collective action are more demanding than or different from Rule 23's requirements, the Court will analyze plaintiff's certification requests as a single request to certify a Rule 23 class and apply those standards. *See Tomeo v. W&E Commc'ns, Inc.*, No. 14 C 2431, 2016 WL 8711483, at *15 (N.D. Ill. Sept. 30, 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (assuming, without deciding, that "the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure")).

**B.     Analysis**

After reviewing the facts and procedural history of this case, Judge Gilbert discussed the Rule 23 requirements, determined that plaintiff had satisfied them all, and recommended that this Court certify an IMWL class action and an FLSA collective action. Adventist raises six objections to the Report and Recommendation, the first of which is that Judge Gilbert erred by concluding that Smith can serve as an adequate representative, considering his credibility problems.

Judge Gilbert described the relevant underlying facts as follows:

> The time frame at issue in this lawsuit is July 27, 2013, to the present. From July 2013 through February 2016, Smith worked full-time as a home healthcare nurse for Adventist. While he was employed by Adventist, Smith also

> worked in a full-time position as a home healthcare nurse for Girling/Kindred Home Health and part-time with ATI Summit Home Health. From July 2013 through February 2016, Smith worked full-time as a nurse for both Adventist and Girling caring for patients in their homes. Beginning in November 2015 through at least March 2017, Smith was employed part-time by ATI as nurse/case manager. As with Adventist, Smith recorded his time with patients and was required to keep track of his patient visits at both Girling and ATI.
>
> It is undisputed that Smith's timekeeping records are not accurate. There also is significant overlap between Smith's Adventist time records for patient visits and the records of his patient visits for his other employers. On multiple occasions, it appears Smith recorded he was with an Adventist patient in his Adventist timekeeping records at the same time he recorded in his Girling records that he was visiting a Girling patient. In other words, Adventist argues that Smith's time records, on their face, appear to show that he was in two places treating two different patients at the same time.

(ECF No. 114, Report & Recommendation at 3.) Adventist contends that Smith is therefore not an adequate representative or similarly situated to other Clinicians because he has credibility issues that are relevant to a central issue in this case—the time he spent performing his job for Adventist.

In *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 727-28 (7th Cir. 2011), the Court of Appeals vacated a class certification and remanded for reconsideration of putative class representative CE Design's adequacy, where the record raised "serious doubts" about the truthfulness of its president's testimony regarding facts that were critical to a possible defense. The Court explained that the presence of "even an arguable defense peculiar to the named plaintiff . . . may . . . bring into question the adequacy of the named plaintiff's representation," and further noted that "[a] named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Id.* at 726. The Court cautioned that it was not "extending an invitation to defendants to try to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative," and emphasized the

5

importance of distinguishing "[s]erious challenges" to adequacy from "petty issues manufactured by defendants to distract the judge from his or her proper focus . . . on the interests of the class." *Id.* at 728. It further stated: "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.*

Judge Gilbert deemed Smith's adequacy a close call, acknowledging that "[o]ne might question whether Smith is the best possible class representative in light of the credibility challenges he will face." (Report & Recommendation at 11.) Ultimately, however, Judge Gilbert noted (accurately) that a putative class representative can be adequate without being perfect or the best representative, and found that Smith is adequate because the unique aspects of his claims arise primarily at the damages phase of the case and will not materially affect a decision on whether Adventist properly classified Clinicians as exempt and did not pay overtime. (*Id.* at 11-12.) On *de novo* review, this Court is persuaded otherwise due to Smith's peculiar work situation, the severity of his credibility issues, and the fact that those issues are directly related to the critical issue of the time Smith actually spent performing his job for Adventist.

When Smith worked full-time as a nurse for Adventist, he also worked full-time as a nurse for Girling. And, for a few months that overlapped with the time Smith worked for those

6

employers, he *also* worked part-time as a nurse/case manager for ATI.[2] In the context of an overtime case, those circumstances raise eyebrows from the start. Furthermore, Smith's time records create serious doubts about his truthfulness. Smith recorded his start and end times with patients for all three employers and scheduled his patient visits based on patient location, as opposed to separating his schedule according to employer, so that he visited patients for one employer intermingled with patients for another employer during the same workday. He stated in his sworn declaration in support of class certification that "the vast majority of [his] start time entries are accurate," with the exception of "some inadvertent errors," and that the total amount of time spent in patients' homes as documented was "accurate." (ECF No. 89-4, Decl. of Ryan Smith ¶ 14.) But when asked at his deposition about several instances of time entries for work for one employer that overlapped with time entries for work for another employer, Smith initially characterized those instances as "mistakes," and later conceded that the vast majority of his time entries were "inaccurate" when later confronted with counsel's estimate that he had recorded times that overlapped on 536 days out of 653 days he had worked for both Adventist and Girling. (ECF No. 95-4, Dep. of Ryan Smith at 280-81, 293-98.) Many instances of overlap are of significant length, not just a few minutes.

Smith characterizes his recordkeeping as merely "allegedly inaccurate or inattentive," and argues that it does not demonstrate dishonesty. (ECF No. 117, Pl.'s Resp. at 5.) But he admitted its pervasive inaccuracy. While Smith appears to blame that inaccuracy on the nature of Adventist's recording system, which is not structured as a timekeeping system, there is

---

[2]Plaintiff quarrels with Adventist's characterization of his work schedule as "unique" and asserts that its "claimed 'uniqueness' . . . is purely speculative and conjectural." (ECF No. 117, Pl.'s Resp. at 7 n.2.) In ordinary human experience, however, it is highly unusual for a person to simultaneously hold two full-time jobs and a part-time job.

nonetheless a serious issue of his veracity concerning how much time he worked for Adventist. The frequency and nature of the overlapping time entries could lead to a reasonable inference that Smith was not recording his time in an honest way. That issue is at the heart of this case, regardless of the fact that Adventist's classification of Clinicians as exempt is also a central, class-wide issue. Because there is admissible evidence on a key question that so severely undermines Smith's credibility that a fact finder might reasonably focus on it to the detriment of absent class members' claims, the Court therefore concludes that Smith would not adequately represent the putative class of Clinicians, nor is he similarly situated to the putative collective. *See CE Design*, 637 F.3d at 725 ("CE cannot be an adequate representative . . . if [its president] is not credible on the key question of whether CE invited or permitted the faxed advertisements about which it now complains."); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (finding that allowing a plaintiff whose statements went "beyond minor inconsistencies" to prosecute the case as a class action "would not be fair to the Court, to the defendants, or to the other individuals whose interests plaintiff purports to represent").

In light of the Court's conclusion that Smith is not an adequate class representative or similarly situated to other Clinicians, the Court need not address Adventist's remaining objections.[3] The Court sets aside the portion of the Report and Recommendation pertaining to adequacy (III.D.).

Plaintiff's counsel may be able to find a substitute representative who does not suffer from credibility problems, so the Court's decision that Smith is not an adequate class

---

[3] Four of Adventist's remaining objections are Smith-specific, that is, premised on arguments that, with Smith at the helm, other requirements for class certification are not satisfied. The fifth remaining objection is an argument made "out of an abundance of caution" that Judge Gilbert erred to the extent that his findings are considered dispositive on the merits. They are not.

representative does not finally resolve the question of whether this suit should be allowed to proceed as a class and collective action. *See CE Design*, 637 F.3d at 728. Although Adventist contends that the Court should reverse and vacate Judge Gilbert's Report and Recommendation in its entirety, it does not argue that Judge Gilbert's findings with respect to numerosity and commonality were in error. The Court agrees with Judge Gilbert that the proposed class is ascertainable and satisfies the numerosity requirement (66 putative class members) and that questions of law or fact common to the proposed class exist. Accordingly, the Court adopts those portions of Judge Gilbert's analysis (III.A. and III.B.), along with those portions of the Report and Recommendation that discuss Adventist and its pay structure and the applicable legal standards (I.A. and II.). Assuming that plaintiff's counsel were able to find a substitute plaintiff and again seek certification of the same class and collective, the Court's starting point thus would be the typicality requirement.

## CONCLUSION

For the reasons explained above, the Court sustains in part defendant's objections to the Report and Recommendation [114]; sets aside in part and adopts in part the Report and Recommendation; and denies without prejudice plaintiff's revised motion for Rule 23 class certification of his state-law claim and for certification of his FLSA claim under Section 216(b) [89]. A status hearing is set for March 6, 2018, at 9:30 a.m. to discuss the next steps in the case.

**DATE**: February 20, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**