THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| APRYL IVY, on behalf of herself, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-cv-7606 |
| v. | ) ) | Judge Ronald A. Guzman |
| ADVENTIST MIDWEST HEALTH, an Illinois Non-profit Corporation, d/b/a ADVENTIST HEALTH CARE AT HOME, | ) ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) | |

JOINT MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

| ATTORNEYS FOR PLAINTIFFS: | ATTORNEYS FOR DEFENDANT: |
|---|---|
| James B. Zouras | Molly A. Arranz |
| Ryan F. Stephan | Sara S. Zorich |
| Teresa M. Becvar | SMITHAMUNDSEN LLC |
| STEPHAN ZOURAS, LLP | 150 N. Michigan Ave., |
| 205 North Michigan Avenue | Suite 3300 |
| Suite 2560 | Chicago, Illinois 60601 |
| Chicago, Illinois 60601 | 312.894.3200 |
| 312.233.1550 | marranz@salawus.com |
| lawyers@stephanzouras.com | szorich@salawus.com |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

I. FACTUAL AND PROCEDURAL BACKGROUND...........................................2

    A. Procedural History ................................................................................2

    B. Discovery Completed.............................................................................3

    C. Settlement Negotiations ........................................................................3

II. SUMMARY OF THE SETTLEMENT TERMS ................................................4

    A. The Settlement Amount .........................................................................4

    B. Eligible Class Members .........................................................................4

    C. Releases...................................................................................................5

    D. Allocation Formula ................................................................................5

    E. Service Payments to Named Plaintiff and Opt-In Plaintiff...................5

    F. Attorneys' Fees and Litigation Costs....................................................6

    G. Settlement Administrator .......................................................................6

III. CLASS ACTION SETTLEMENT PROCEDURE .............................................6

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE...............10

    A. The Court Should Provisionally Certify the Settlement Class Under Rule 23 and the FLSA..........................................................................12

    B. The Settlement Is Fair, Reasonable, and Adequate ...............................19

        1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor). ...........21

        2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor)......................................................24

        3. The Reaction of the Class Has Been Positive (Third Factor). ..................26

4.     Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor). .........................................................................26

5.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor)...........................................27

C.    The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion...............................................................27

V.    THE CLASS NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE.........................................................................28

VI.   PRELIMINARY APPROVAL OF PLAINTIFFS' COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE .....................................................29

CONCLUSION...........................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................................ 10

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591 (1997) ........................................................................... 13, 15, 17, 19

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ............................................................. 11, 21, 26, 28

*Boeing Co. v. VanGemert*,
    444 U.S. 472 (1980) ......................................................................................... 31

*Butler v. Am. Cable & Tel., LLC*,
    No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) .............................. 20

*Campbell v. Advantage Sales & Mktg. LLC*,
    No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012)........................... 30

*Castillo v. Noodles & Co.*,
    No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) .......................... 30

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ........................................................................... 27

*Cook v. McCarron*,
    No. 92 Civ. 7042, 1997 WL 47448 (N.D. Ill. Jan. 30, 1997).............................. 11

*Curtiss-Wright Corp. v. Helfand*,
    687 F.2d 171 (7th Cir. 1982).............................................................................. 24

*De La Fuente v. Stokely-VanCamp, Inc.*,
    713 F.2d 225 (7th Cir. 1983).............................................................................. 14

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985).............................................................................. 25

*Driver v. AppleIllinois*,
    265 F.R.D. 293 (N.D. Ill. 2010) ....................................................................... 18

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ....................................................................... 21, 23

*Elwell v. Univ. Hosps. Home Care Servs.*,
   276 F.3d 832 (6th Cir. 2002) ....................................................... 22

*Equity Funding Corp. of America Sec. Litig.*,
   603 F.2d 1353 (9th Cir. 1979) ..................................................... 24

*Espenscheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) ....................................................... 13

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) .................................................. 10, 11

*Florin v. Nationsbank of Ga., N.A.*,
   24 F.3d 560 (7th Cir. 1994) ......................................................... 30

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) .................................................. 12, 26

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
   988 F. Supp. 1130 (N.D. Ill. 1997) .............................................. 20

*Hurt v. Commerce Energy, Inc.*,
   No. 12 Civ. 0758, 2014 WL 3735460 (N.D. Ohio July 28, 2014)........ 18

*In re Aon Corp. Wage & Hour Employment Practices Litig.*,
   No. 08 Civ. 5802, 2011 WL 248448 (N.D. Ill. Jan. 26, 2011) ............ 22

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010)...................................... 11, 15, 26

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001)......................................................... 30

*In re Chocolate Confectionary Antitrust Litig.*,
   289 F.R.D. 200 (M.D. Pa. 2012)................................................... 17

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) ................................................ 11

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 179 (2d Cir. 1987)......................................................... 23

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .............................................. passim

*Kaufman v. American Express Travel Related Servs. Co., Inc.*,
    264 F.R.D. 438 (N.D. Ill. 2009)..........................................................................12

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
    Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ...................11

*Kurgan v. Chiro One Wellness Centers LLC*,
    No. 10 Civ. 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014).........................................18, 19

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
    No. 00 Civ. 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ............................................16

*Lukas v. Advocate Health Care Network and Subsidiaries*,
    No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015).........................13, 14, 15, 18

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
    834 F.2d 677 (7th Cir. 1987) ...............................................................................23

*Matter of Cont'l Ill. Secs. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................................29

*McCue v. MB Financial, Inc.*,
    No. 15 Civ. 0988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ...........................................17

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009).....................................................................17

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    762 F.2d 1093 (D.C. Cir. 1985) ............................................................................10

*Moreno v. Napolitano*,
    No. 11 Civ. 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) .........................................15

*Muro v. Target Corp.*,
    580 F.3d 485 (7th Cir. 2009) ...............................................................................14

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
    231 F.R.D. 280 (N.D. Ill. 2005).............................................................................14

*O'Brien v. Encotech Const. Servs., Inc.*,
    183 F. Supp. 2d 1047 (N.D. Ill. 2002) ......................................................................20

*Patterson v. Stovall*,
    528 F.2d 108 (7th Cir. 1976) ............................................................................10, 21

*Pickett v. Simos Insourcing Solutions, Corp.*,
   No. 17-cv-1013, 2017 WL 1433309 (N.D. Ill. April 18, 2017)............................................. 10

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)........................................................................................ 30

*Redman v. RadioShack Corp.*,
   763 F.3d 622 (7th Cir. 2014) ...................................................................................... 30

*Resurrection v. Shannon*,
   2013 IL App (1st) 111605............................................................................................ 2

*Retired Chicago Police Assoc. v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) .......................................................................................... 15

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ...................................................................................... 25

*Rindfleisch v. Gentiva Health Servs., Inc.*,
   962 F. Supp. 2d 1310 (N.D. Ga. 2013) ........................................................................ 22

*Robles v. Corporate Receivables, Inc.*,
   220 F.R.D. 306 (N.D. Ill. 2004)................................................................................... 16

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) .................................................................................... 14

*Rubenstein v. Republic Nat'l Life Ins. Co.*,
   74 F.R.D. 337 (N.D. Tex. 1976) .................................................................................. 25

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009)................................................................................... 14

*Seiden v. Nicholson*,
   72 F.R.D. 201 (N.D. Ill. 1976)..................................................................................... 25

*Smith v. Family Video Movie Club, Inc.*,
   311 F.R.D. 469 (N.D. Ill. 2015)................................................................................... 13

*Smith v. Sprint Commc'ns Co.*,
   387 F.3d 612 (7th Cir. 2004) ...................................................................................... 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................................ 19, 20

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
    No. 02 Civ. 1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004)................................... 30

*In re Traffic Exec. Ass'n-E. R.R.*,
    627 F.2d 631 (2d Cir. 1980)...................................................................... 12

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ..................................................................... 10

*Urnikis-Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ..................................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................ 30

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ............................................................ 22

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ........................ 13

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ......................................................... 1

Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.*.................................................... 1

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... passim

Fed. R. Civ. P. 54 .............................................................................................. 6

**Other Authorities**

5 James Wm. Moore, Moore's Federal Practice (3d ed. 2001) .................................... 31

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)................... passim

Manual for Complex Litigation (3d ed. 2000) .................................................... 10, 12

## INTRODUCTION

Plaintiff Apryl Ivy ("Named Plaintiff"),[1] individually and on behalf of a proposed class of 70 other employees (collectively "Plaintiffs" or "Class Members"), alleges that Defendant Adventist Midwest Health, d/b/a Adventist Health Care at Home ("Adventist" or "Defendant") misclassified Plaintiffs as exempt from overtime pay and failed to compensate them for all hours worked in excess of 40 hours per work week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* Plaintiffs and Defendant (the "Parties") have agreed to settle this hybrid Rule 23 class action and FLSA collective action for the significant, maximum monetary relief of $288,000.00.

The Court should preliminarily approve the Parties' proposed settlement agreement because it is fair, reasonable, and adequate under the governing legal standards and provides reasonable monetary compensation to the Class Members. The Parties respectfully request the Court: (1) grant preliminary approval of the proposed Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A, and plan of settlement administration therein; (2) approve the proposed Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice"), the Claim Form, and the Election to Opt Out And Be Excluded From the Settlement and Class Action form ("Opt-Out Form") (collectively, "Notice Materials"), attached to the Settlement Agreement as Group Exhibit B; (3) authorize mailing of the Notice Materials in the manner set forth in the Settlement Agreement; (4) schedule a final approval hearing approximately 100 days after the date of preliminary approval; and, (5) enter the [Proposed] Order Certifying Class for Settlement Purposes Only and Granting Preliminary Approval of Class Action and FLSA Collective Action Settlement ("Preliminary Approval

---

[1]  Unless otherwise defined herein, all terms used in this Motion will have the same meaning as defined in the Settlement Agreement.

Order"), attached as Exhibit B and filed contemporaneously herewith.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>Procedural History</u>

This putative class and collective action was filed on July 27, 2016. (ECF No. 1.) The initial Named Plaintiff, Ryan Smith, alleged that he and other home health registered nurses, physical therapists, occupational therapists, and speech pathologists (collectively, "Clinicians") were misclassified by Adventist as exempt from the overtime requirements of the FLSA and IMWL.[2] Ryan Smith alleged that as a result of their misclassification, Clinicians were deprived of overtime wages in violation of federal and state wage law. He sought to represent himself and similarly situated Clinicians as a collective action under the FLSA and a class action under the IMWL and Federal Rule of Civil Procedure 23.

On April 28, 2017, Ryan Smith moved for certification of a class and collective of Clinicians (ECF No. 89.) On February 20, 2018, the Court denied the motion, without prejudice, finding Ryan Smith was not an adequate representative. (ECF No. 119.) Thereafter, the Court granted Plaintiffs leave to amend their lawsuit to substitute opt-in Plaintiff Apryl Ivy as Named Plaintiff, and Plaintiffs filed their Amended Collective and Class Action Complaint on March 1, 2018. (ECF No. 123.) Ryan Smith is no longer a Named Plaintiff, but because he timely filed an opt-in consent form to join the FLSA collective action, he is an opt-in Plaintiff ("Opt-In Plaintiff").

Defendant specifically denies the claims raised in the lawsuit and the Amended Collective and Class Action Complaint and believes it has asserted meritorious defenses thereto. Defendant denies that the lawsuit is suitable for class certification and further specifically denies any fault,

---

[2]      The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g.*, *Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

wrongdoing or liability to any individual or group of individuals, including but not limited to Named Plaintiff and Class Members, arising out of the allegations, theories, and/or claims raised in the lawsuit, including but not limited to those relating to overtime, unpaid wages and penalties. By entering into the Settlement Agreement, Defendant does not admit any liability or wrongdoing and expressly denies the same.

### B.    Discovery Completed

Plaintiff has conducted extensive investigation and case analysis including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories; (c) the exchange of over 16,000 pages of written discovery, including voluminous production of emails and other electronically stored information ("ESI") in the form of pay data and home visit data from Adventist's electronic medical record software; (d) the depositions of Ryan Smith and three of his family members; (e) the depositions of four management representatives from Adventist; (f) data analyses by Plaintiffs' undisclosed expert; (g) the review of Adventist's written policies and procedures; and (h) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Declaration of James B. Zouras ("Zouras Decl.") ¶ 6, attached as Exhibit C.

### C.    Settlement Negotiations

On March 7, 2018, the Parties attended a day-long mediation overseen by a private mediator, the Honorable James Holderman (Ret.), during the course of which the parties negotiated at arm's length and in good faith and were able to reach a class action settlement in principle which is memorialized in the formal Settlement Agreement executed in full on June 19, 2018. Zouras Decl. ¶ 7. This settlement provides for substantial monetary relief for 71 Class Members, inclusive of the Named Plaintiff and Opt-In Plaintiff. *Id.* ¶ 8. The Class is defined as "any individual

(inclusive of the Named Plaintiff) employed by Adventist Midwest Health as a home health Clinician in Illinois during the period July 27, 2013 through June 19, 2018, who were classified as exempt and were allegedly not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks." Settlement Agreement ¶ G.

## II.      SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendant. Zouras Decl. ¶ 9.

### A.      The Settlement Amount

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties agreed to a Maximum Settlement Amount of $288,000.00. Settlement Agreement ¶ R. The Maximum Settlement Amount covers: (1) Class Counsel's Fee Award; (2) Class Counsel's Expense Award; (3) the Settlement Administrator's Administrative Fees; (4) all payments to Class Members; (5) a Service Payment to the Named Plaintiff; and (6) a Service Payment to Opt-In Plaintiff. *Id.* Any unclaimed funds remaining in the Maximum Settlement Amount after distribution, arising either from funds not claimed by the Settlement Class or from uncashed checks, will be returned to Adventist. *Id.* ¶ 55.

### B.      Eligible Class Members

Class Members eligible to receive a settlement payment are all individuals employed by Adventist Midwest Health as home health Clinicians in Illinois during the period July 27, 2013 through June 19, 2018, who were classified as exempt and were allegedly not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks. Settlement Agreement ¶ G. The 71 Class Members are identified on Exhibit A to the Settlement Agreement. *See* Settlement Agreement at Ex. A.

### C.    Releases

The Settlement Agreement provides that the Class Members who do not validly and timely request exclusion from the Settlement, regardless of whether they submit a Claim Form, will release their state, local, and common law wage and hour claims, including without limitation all claims for relief under the IMWL. Settlement Agreement. ¶ 58. In addition, all Class Members who cash or otherwise negotiate their settlement check consent to join (*i.e.*, opt into) the FLSA collective action and will thereby release their federal wage and hour claims. *Id.*

### D.    Allocation Formula

The Remaining Settlement Amount of $161,000.00, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and service payments, will be allocated proportionately among the Class Members based on their employee pay records and weekly productivity data (*i.e.* weekly Weighted Visit Equivalents or "WVEs") provided by Adventist for the class period. Settlement Agreement ¶ 26. Every Class Member is eligible for a $250.00 minimum payment, plus an additional allocation based on the date the Class Member's alleged claim accrued. *Id.* For claims accruing from March 7, 2015 to the present, each Class Member who does not opt out will automatically receive a payment (the "Guaranteed Payment Amount"). *Id.* To receive a payment for claims accruing from July 27, 2013 through March 6, 2015, each Class Member must submit a Claim Form (the "Claim Payment Amount"). *Id.* The allocation method is based on an analysis of over 7,300 workweeks of data for 71 Class Members during a class period spanning nearly five years and results in an average settlement distribution of more than $2,250.00 per Class Member. Zouras Decl. ¶ 12.

### E.    Service Payments to Named Plaintiff and Opt-In Plaintiff

Along with their Motion for Final Approval of the Settlement, Plaintiffs will apply for

Court approval, and Defendant will not oppose, distribution of Service Payments not exceeding $6,500.00 to the Named Plaintiff and $2,000.00 to the Opt-In Plaintiff to be paid out of the Maximum Settlement Amount. Settlement Agreement ¶ 45.

       F.     **Attorneys' Fees and Litigation Costs**

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), along with their Motion for Final Approval of the Settlement, Plaintiffs' counsel will petition for Court approval of an award of attorneys' fees and costs. Plaintiffs' counsel will seek, and Defendant will not oppose, a Fee Award not to exceed $33^{1}/_{3}$% of the Maximum Settlement Amount (or $96,000.00), an Expense Award of reasonable litigation costs not to exceed $15,000.00, and Administrative Fees in an amount to be determined, but estimated to be $7,500.00. Settlement Agreement ¶ 45. The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Plaintiffs' counsel, their hourly rates, the risks undertaken, and the results achieved.

       G.     **Settlement Administrator**

The Parties have agreed to retain Dahl Administration LLC as the Settlement Administrator. Settlement Agreement ¶ CC. The Settlement Administrator's fees for administration and distribution of the settlement award will be paid from the Maximum Settlement Amount as set forth above. *Id.* ¶ R.

## III.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.     Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.      A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22 *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. With this motion, the Parties request that the Court take the first step—granting preliminary approval of the Settlement Agreement, approving the proposed Notice Materials and ordering their distribution.

The Parties respectfully propose that the Court issue a Preliminary Approval Order, which initiates the following schedule:

1.      Within seven (7) days after the Court enters a Preliminary Approval Order, Defendant will provide the Settlement Administrator with the following, as to each Class Member: 1) name; 2) last known home address; 3) Social Security number; and 4) last known telephone number (the "Class List"). Settlement Agreement ¶ 25.

2.      Within five (5) days of the Settlement Administrator receiving the Class List, Plaintiffs' counsel will provide to the Settlement Administrator and Defendant the settlement payment allocation for each Class Member. *Id.* ¶ 27.

3.      Within ten (10) calendar days after receiving the Class List and settlement payment allocation for the Class Members, the Settlement Administrator will send the Notice Materials (Notice of Settlement, Claim Form (as applicable), and Opt-Out Form) to the Class Members. *Id.* ¶ 28. The Notice of Settlement describes the nature of the litigation, the terms of the settlement, as well as the Class Members' options with regard to participating in the proposed settlement, objecting to the settlement, or opting out. *See* Settlement Agreement, Group Ex. B (Notice Materials). The Notice Materials will be sent, postage pre-paid, via first class mail to the last-known address of each Class Member. *Id.* If any such mailing is returned as undeliverable, the Settlement Administrator will undertake reasonable efforts to identify a current address and, if one is so identified, will mail the Notice Materials to the new address. *Id.* ¶ 24.

4.      To receive their Guaranteed Payment Amount, Class Members need not do anything. *Id.* ¶ 26(a). To receive their Claim Payment Amount, all Class Members, with the exception of the Named Plaintiff and Opt-In Plaintiff, must execute a Claim Form and submit it to the Settlement Administrator. *Id.* ¶ 26(b). To be deemed timely, a Claim Form, an Opt-Out Form, or objection must be postmarked by no later than sixty (60) calendar days from the date the Notice Materials are

mailed. *Id.* ¶ 33.

5.    Within ten (10) days after the Claim Form, opt out and objection deadline, the Settlement Administrator will provide the Parties' counsel with information regarding Class Members who timely filed Claim Forms and a total of the Class Payment Amount. *Id.* ¶ 41.

6.    Within ten (10) days after the Claim Form, opt out and objection deadline, the Settlement Administrator will provide the Parties' counsel with a declaration that includes information indicating that the Notice Materials have been disseminated to the Class Members in accordance with the Court's order, a complete list of all individuals who timely submitted Claim Forms, all individuals who have timely submitted Opt-Out Forms to request exclusion from the Settlement Class, and all Class Members who have timely objected to the Settlement. *Id.* ¶ 40.

7.    A final approval hearing on the fairness and adequacy of the proposed settlement will be held on a date subject to the Court's determination approximately one hundred (100) days after the date of preliminary approval. *Id.* ¶ 21. The Notice of Settlement will advise Class Members of the Final Approval Hearing and their right to object to the settlement. *See* Settlement Agreement, Group Ex. B (Notice Materials).

8.    No later than seven (7) days before the Final Approval Hearing, the Parties will file a joint motion for final approval of settlement, and Plaintiffs' counsel will file a motion seeking approval of the agreed-upon award of attorneys' fees and costs relating to their representation of Class Members. *Id.* ¶ 22.

9.    After the Final Approval Hearing, if the Court grants the Parties' motion for final approval of the Settlement, the Court will issue a Final Approval Order and Final Judgment. *Id.* ¶ 46. The "Effective Date" of the settlement will be the first business day after the later of (a) the Court entering the Final Approval Order in a form agreed to by the Parties or (b) if any Class Member objected to the settlement, the date on which the date for filing an appeal has expired or, if there are appeals, the date on which the settlement and judgment has been affirmed in all material respects by the appellate court of last resort. *Id.* ¶ K.

10.   No later than fourteen (14) days after the Effective Date, Defendant will fund the Settlement Amount, which shall consist of the following: (1) Final Class Payments (accounting for Claim Forms submitted), (2) Class Counsel's Court-approved Fee Award, (3) Class Counsel's Court-approved Expense Award, (4) the Court-approved Administrative Fees, (5) the Court-approved Service Payment to the Named Plaintiff, and (6) the Court-approved Service Payment to the Opt-In Plaintiff. *Id.* ¶ 51. The Settlement Administrator will deposit the Settlement Amount into the Qualified Settlement Fund opened and administered by the Settlement Administrator. *Id.*

11. Within seven (7) calendar days of receipt of the Settlement Amount, the Settlement Administrator shall notify Defendant of the employer portion of the payroll taxes and within seven (7) days thereafter the Defendant shall fund its share of payroll taxes into the Qualified Settlement Fund opened and administered by the Settlement Administrator. *Id.* ¶ 52-53.

12. Within thirty (30) calendar days of the Effective Date, the Settlement Administrator will disburse the settlement checks to the Settlement Class[3] and will pay attorneys' fees and costs to Plaintiffs' counsel. *Id.* ¶ 55.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing notice, and thereafter submitting a claim form, opting out of the settlement, and objecting to the proposed settlement, will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process.

| | *Event* | *Timing* |
|---|---|---|
| 1. | Defendant to Provide Class List to Settlement Administrator | Within 7 Days After Entry of Preliminary Approval Order |
| 2. | Plaintiffs' Counsel to Provide Settlement Payment Allocation | Within 5 Days After Receipt of Class List |
| 3. | Settlement Administrator to Issue Class Notice | Within 10 Days After Receiving Class List and Settlement Payment Allocation |
| 4. | Deadline for Submitting a Claim Form, Opting Out, or Objecting to Settlement | 60 Days After the Issuance of Class Notice |
| 5. | Final Approval Hearing | Approximately 100 Days After Entry of Preliminary Approval Order |
| 6. | Effective Date | The First Business Day After the Court Enters Final Approval of the Settlement Agreement, If No Objection by Any Class Member Has Been Filed |
| 7. | Defendant to Fund the Settlement | Within 14 Days After Effective Date |
| 8. | Settlement Administrator to Distribute Funds to Settlement Class, Named Plaintiff, Opt-In Plaintiff, and Plaintiffs' Counsel | Within 30 Days After Effective Date |

---

[3] Named Plaintiff's checks, along with those of the Opt-In Plaintiff, shall be sent to their counsel, Stephan Zouras, LLP, for distribution. Settlement Agreement ¶ 55.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Because federal courts favor settlement, "the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (citing *Isby*, 75 F.3d at 1198-99). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires court approval. Fed. R. Civ. P. 23(e). The decision to approve a proposed settlement is committed to the Court's sound discretion. *See, e.g.*, *Pickett v. Simos Insourcing Solutions, Corp.*, No. 17-cv-1013, 2017 WL 1433309, at *1 (N.D. Ill. April 18, 2017); *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual for Complex Litigation § 30.41 (3d ed. 2000).

Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

At the preliminary approval stage, this Court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Cook v. McCarron*, No. 92 Civ. 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) (citing *Armstrong*, 616 F.2d at 314). Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id*.

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). In considering whether to grant preliminary approval of a proposed settlement agreement, the Court utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op*

*Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval … .

Manual for Complex Litigation § 30.41 (3d ed. 2000). Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness") (internal quotation omitted). After preliminary approval, the second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the class. *Newberg* § 11.41.

## A. The Court Should Provisionally Certify the Settlement Class Under Rule 23 and the FLSA.[4]

"Before addressing the substantive provisions of the Settlement Agreement, the Court must first determine whether the proposed class can be certified" for settlement purposes. *Kaufman v. American Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) (citation omitted). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification

---

[4]     Defendant does not contest the certification of the Class or Collective Action for purposes of settlement only.  Should the Court deny approval of the settlement, Defendant has not waived any rights it has to contest certification in any future motion Plaintiff may bring in this matter.

analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) (citing *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004)); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

The Parties have stipulated to Rule 23 certification and final certification under FLSA § 216(b) and request that the Court certify the Settlement Class defined above for settlement purposes only. When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether the proposed Settlement Class satisfies the requirements of Rule 23 and the FLSA. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class. Further, because the standards for final FLSA certification and Rule 23 class certification are similar, the analysis set out below supports both class and collective treatment of Plaintiffs' claims for settlement purposes. *See Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 474 (N.D. Ill. 2015) ("the standards for certification under Rule 23 and the FLSA (final certification rather than conditional) have 'largely merged'"), *quoting Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Indeed, this Court has granted *contested* motions for Rule 23 and final FLSA certification in class actions prosecuted by Plaintiffs' counsel involving similar claims, legal theories and facts. *See Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) (Guzman, J.).

Rule 23(a)(1) & (2). With regard to the first two requirements of class certification, this Court has previously found that "the proposed class is ascertainable and satisfies the numerosity requirement … and that questions of law or fact common to the proposed class exist." (ECF No. 119 at 9.) The proposed Settlement Class has not materially changed since the Court's ruling. Accordingly, Rule 23(a)(1)'s numerosity and Rule 23(a)(2)'s commonality requirements are met.

Rule 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente*, 713 F.2d at 232).

Named Plaintiff's claims are typical of the claims of other class members because these claims arise from the same course of action by Adventist which applies to all Clinicians: the alleged failure to pay overtime because of a challenged classification as exempt. *See Lukas*, 2015 WL 5006019 at *4 (typicality met where "[t]he practice or course of conduct Plaintiffs complain

of is [defendant]'s policy of classifying Clinicians as exempt yet paying them with a combination of fee-based and hourly rates"). While there may be factual differences between claims of the Named Plaintiff and those of other putative class members, their claims are nevertheless based on the same legal theory. *Moreno v. Napolitano*, No. 11 Civ. 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted). Thus, as stated by this Court in *Lukas*, the claims of the class representative "are clearly typical of those of the claims of other class members." *Lukas*, 2015 WL 5006019 at *4.

Rule 23(a)(4). The requirement that "the representative parties … fairly and adequately protect the interests of the class … serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining … whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20. Because of the unique nature of the class action device, "[t]he adequacy-of-representation requirement 'is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 343 (quoting *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)) (further internal quotations and citation omitted).

"A class representative must … be part of the class and possess the same interest and suffer the same injury as the class members." *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (internal quotations and citation omitted). "This requires the district court to ensure that

15

there is no inconsistency between the named parties and the class[,] … [because a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal quotations and citations omitted).

The proposed class representative, Apryl Ivy, worked as a Clinician for Adventist during the class period, and her claims are based on the same allegedly unlawful "salary plus" pay scheme as the rest of the proposed class. She has shown her commitment to vigorously prosecute this litigation by volunteering to step in and substitute as Named Plaintiff when Ryan Smith was determined to be an inadequate class representative. The proposed class representative has also provided invaluable information and declaration testimony, and otherwise assisted Plaintiffs' counsel in settlement negotiations. This qualifies Named Plaintiff as a "conscientious representative plaintiff" and satisfies the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004).

The class representative does not have any interests antagonistic to the class. Rather, she has the same interests and has suffered the same damages for unpaid overtime as the proposed class members. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 Civ. 5755, 2000 WL 1774091, at *5-6 (N.D. Ill. Dec. 1, 2000) (no antagonistic interest where plaintiff alleged same violation and remedy as the rest of the class).

Likewise, Plaintiffs' counsel have fairly and adequately protected the interests of the class. Plaintiffs' attorneys are highly experienced and have successfully acted as representative counsel in numerous wage and hour class actions, as well as other complex class actions, in federal and state courts in the Northern District of Illinois and throughout the United States, including several successfully resolved and active class actions on behalf of other groups of clinicians with similar claims. *See* Zouras Decl., Attachment A (Stephan Zouras, LLP Firm

Resume).

Plaintiffs' counsel invested significant time and resources engaging in extensive discovery and motion practice before the settlement was reached. Indeed, the advanced stage of discovery, the use of a mediator, and the arm's-length negotiations with Defendant, demonstrate Plaintiffs' counsel's vigorous pursuit of the interests of the class and their determination to avoid even an appearance of collusion with Defendant. *See McCue* v. *MB Financial, Inc.*, No. 15 Civ. 0988, 2015 WL 1020348, at *2 (N.D. Ill. Mar. 6, 2015) (citing *McKinnie* v. *JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009)). In short, Named Plaintiff and her counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied.

Rule 23(b)(3). Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

Here, there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members so as to render a class settlement appropriate. As explained above, Plaintiffs were uniformly subject to the same "salary plus" pay scheme. The question of the legality of this pay scheme and of the right of Plaintiffs to any unpaid overtime can, for certification purposes, be determined for the entire class in a single adjudication, without

considering individualized issues. *See Lukas*, 2015 WL 5006019 at *6 ("Whether a … pay system renders an employee ineligible for exemption from the FLSA overtime provisions is therefore not only a common issue underlying the claims of all class members, but in many ways a dispositive one."); *Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 0758, 2014 WL 3735460, at *2-3 (N.D. Ohio July 28, 2014) ("Here, the issue is not the minor individual differences between the [members of the class], but rather the Defendant's uniform treatment of [them] as exempt … – both liability and defenses to liability will be appropriately made on a classwide basis."); *Kurgan v. Chiro One Wellness Centers LLC,* No. 10 Civ. 1899, 2014 WL 642092, *9 (N.D. Ill. Feb. 19, 2014) ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for purposes of provisional class certification for settlement purposes.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure in this case. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results." *Driver v. AppleIllinois*, 265 F.R.D. 293, 304 (N.D. Ill. 2010) (quoting *Amchem*, 521 U.S. at 615).

The Settlement Agreement provides Class Members with the ability to obtain prompt, predictable, and certain relief, and it contains well-defined administrative procedures to ensure due process. This includes the right of Class Members who may be dissatisfied with the settlement to object or exclude themselves from it. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. *See Kurgan*, 2014 WL 642092 at *9. The settlement relieves the substantial judicial burdens that would be caused by repeated adjudication of the same issues in multiple individualized trials against Defendant. And because the Parties seek to resolve this case through a settlement, any difficulties of managing a class action are vitiated by the administration of this settlement. In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the requirements of the FLSA § 216(b) are also satisfied, and thus Rule 23 certification and final certification under FLSA of the proposed Settlement Class for purposes of settlement is appropriate.

### B.       The Settlement Is Fair, Reasonable and Adequate.

A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful to consider the criteria on which the Court will ultimately judge the settlement.

In making these determinations, courts consider five factors: (1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length

and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997). All of these factors weigh in favor of preliminary approval of the Settlement Agreement.

Additionally, courts have construed the FLSA as requiring approval of a settlement that releases FLSA claims. When a court evaluates an FLSA settlement, its review "requires a similar assessment [to a class settlement]. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Likewise, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor). When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789 at *9 n.9 (citations omitted).

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

Adventist has agreed to settle this case for a maximum of $288,000.00 for a class of 71 Clinicians. Settlement Agreement ¶ R; Zouras Decl. ¶ 12. The settlement amount, therefore, represents significant value for these Class Members—an average sum of more than $2,250.00 per individual, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment—particularly given the attendant risks of litigating the merits of the case through Rule 23 and FLSA class certification, summary judgment proceedings and/or trial, and any appeals of decisions on those matters. Zouras Decl. ¶ 12.

In evaluating the strength of the plaintiffs' case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts have been admonished to "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory … Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889

21

(internal citations and emphasis omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendant's defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendant's "salary plus" compensation plan fails to meet the salary basis test under the FLSA. No courts have addressed this precise issue, and the ones that have addressed similar issues are non-precedential in this district. *See Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting partial summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 838-39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task). Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist regarding whether Named Plaintiff and the Class Members could credibly establish the hours of overtime they worked, if any, and the weeks in which they worked overtime. Further, Plaintiffs would have to overcome arguments that the fluctuating workweek method of calculating overtime premiums (FWW), which results an overtime multiplier of .5 times (rather than 1.5 times) the regular hourly rate, should apply. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *In re Aon Corp. Wage & Hour Employment Practices*

*Litig.*, No. 08 Civ. 5802, 2011 WL 248448, at *3 (N.D. Ill. Jan. 26, 2011) (holding that the FWW method of calculating overtime premiums for salaried employees using a half-time rate applied to the plaintiffs' misclassification claims).

Here, the settlement provides far more than "a fraction of the potential recovery." Plaintiffs' counsel's investigation, including the Named Plaintiff's and Opt-In Plaintiff's testimony and Plaintiff's counsel's data analysis, concluded that Class Members routinely worked in excess of 40 hours during their regular workweek. Zouras Decl. ¶ 13. Depending on whether the FWW method of calculating overtime is applied, which remains an undecided question, Plaintiffs' counsel estimate that the settlement amount distributed directly to the Class Members represents as much as nearly 75% of the Settlement Class's likely maximum potential claim for overtime wages, exclusive of liquidated damages under the FLSA and damages of 2% per month under the IMWL. *Id*.[5] Though not providing the maximum possible value that conceivably might be awarded later at trial, assuming Plaintiffs achieved final FLSA and Rule 23 class certification and overcame Defendant's anticipated summary judgment motion, the settlement provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

"District courts enjoy broad supervisory powers over the administration of class-action

---

[5]     By contrast, Defendant asserts that the settlement actually represents more than any damages attainable at trial, which further supports the adequacy and reasonableness of the settlement.

settlements to allocate the proceeds among the claiming class members … equitably." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation method, the Parties considered, among other things, payroll data specific for each Class Member and data produced from Adventist's electronic medical record software. Zouras Decl. ¶ 10. The distribution is based on an analysis of data from over 7,300 weeks worked during the Class Period. *Id.* ¶ 12. To determine an equitable distribution among competing claimants, the settlement funds were allocated proportionately to each Class Member based on the number of productivity points ("WVEs") over 30 earned each workweek and each Class Member's most recent hourly rate during the class period, subject to a minimum payment of $250.00 applicable to every Class Member. *Id.* The allocation formula accounts for Clinicians' flexible home visit schedules, which resulted in a varying number of visits performed each week, including certain weeks with limited productivity when they likely did not work any hours over 40. *Id.* ¶ 11.

The proposed settlement thus ensures that the Class Members who wish to participate in the settlement will receive significant monetary relief. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Plaintiffs' counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Here, further litigation would certainly result in a second round of briefing on Rule 23 class and FLSA collective action certification and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, on liability and damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. The proposed settlement, on the other hand, provides immediate benefits to the Class Members.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in

favor of preliminary approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

Because the Parties have not yet sent the Notice of Settlement, it is premature to fully assess this factor. *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 349. However, the Named Plaintiff and Opt-In Plaintiff support the settlement, as do Plaintiffs' counsel and Defendant and its counsel. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement. Zouras Decl. ¶ 15. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to object.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Further, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200.

Plaintiffs' counsel are competent and experienced in class actions, particularly wage and hour class actions of exactly this kind, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Zouras Decl. ¶¶ 4-5, 14. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Plaintiffs' counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement reached. *Id.* ¶ 14.

Defendant's counsel also agree this settlement is fair and reasonable, as evidenced by their execution of the Settlement Agreement. This factor therefore weighs in favor of preliminary approval.

26

**5.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This complex hybrid class and collective action was resolved nearly two years after it was initiated. This period involved extensive discovery, including research, analysis, investigation, the exchange of over 16,000 pages of written discovery, including voluminous production of emails and other ESI in the form of pay data and home visit data from Adventist's electronic medical record software, 7 depositions, and extensive motion practice, including Rule 23 and FLSA class certification practice, among other things. *See* Zouras Decl. ¶ 6. The stage of litigation has advanced to a state that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id.* at ¶ 14. Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this factor favors preliminary approval.

The factors all weigh in favor of issuing preliminary approval of the settlement. In the unlikely event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

**C.  The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion.**

There is plainly no collusion or fraud with respect to this proposed settlement, which was reached after intense negotiation under the oversight of private mediator, Honorable James Holderman (Ret.), followed by three months of subsequent negotiation. Zouras Decl. ¶ 7. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

27

Newberg §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis, and motion practice. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the settlement.

In sum, the settlement, on its face, is fair, reasonable, and adequate, and not the product of collusion. *See Isby*, 75 F.3d at 1198, 1200. In addition, "the proposed settlement is within the range of possible approval" and should be submitted to the Class Members for their consideration. *Armstrong*, 616 F.2d at 314 (internal quotation omitted). The Court should grant preliminary approval.

## V.   THE CLASS NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the proposed Notice of Settlement, which is attached to the Settlement Agreement in Group Exhibit B, fully complies with due process and Federal Rule of Civil Procedure 23. Under Rule 23(c)(2)(B), notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

The detailed information in the proposed Notice of Settlement far exceeds this minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Notice of Settlement will be mailed by the

Settlement Administrator to the last known address of each Class Member within ten (10) days of receiving the class list and settlement payment allocation from the Parties. Settlement Agreement ¶ 28. The Settlement Administrator must take reasonable steps to obtain the correct addresses of any Class Member whose Notice is returned as undeliverable and must attempt re-mailing. *Id.* ¶ 55. As discussed above, the proposed Notice of Settlement contains information about how to participate in the settlement, exclude oneself from the settlement, or object to the settlement. Settlement Agreement, Group Ex. B (Notice Materials). Class Members will have sixty (60) days from the mailing of the Notice Materials to submit a Claim Form, opt out, or to comment on or object to the settlement. Settlement Agreement ¶ 31.

The Notice of Settlement explains that, after the Settlement Agreement receives final approval and after any appeals, Class Members will automatically receive a payment for claims accruing from March 7, 2015 through the date of preliminary approval and will only receive a payment for claims accruing from July 27, 2013 to March 6, 2015 if they timely submit a Claim Form. Settlement Agreement, Group Ex. B (Notice Materials). In addition, the Notice of Settlement further explains that Class Members will release their state and local wage and hour claims unless they exclude themselves from the Settlement, and Class Members who cash or otherwise negotiate their settlement checks will consent to join (*i.e.*, opt into) the FLSA collective action and thereby release their federal wage and hour claims. *Id.* Finally, the Settlement Agreement explains that the Class Members who do nothing (*i.e.*, who do not request exclusion from the settlement and do not cash or otherwise negotiate their settlement check) will release their state and local law wage and hour claims but not their federal wage and hour claims. *Id.*

## VI.  PRELIMINARY APPROVAL OF PLAINTIFFS' COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class

litigation is as a percentage of the common fund. *See Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572-74 (7th Cir. 1992), *later proceeding*, 985 F.2d 867 (7th Cir. 1993). To determine what percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from $33^1/_3$% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02 Civ. 1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method (*see Florin v. Nationsbank of Ga., N.A.*, 24 F.3d 560, 565-66 (7th Cir. 1994))—the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *5 (N.D. Ill. Dec. 23, 2016) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements."); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 763 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys").[6] Further, the Supreme Court has recognized that a percentage fee award is properly granted from the value of the total

---

[6]     The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("the trend in this circuit is toward the percentage method"); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund") (citing *In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998)) (internal quotation marks omitted).

benefit that class counsel has created, and therefore necessarily includes the pool of money made available for class members. *Boeing Co. v. VanGemert*, 444 U.S. 472, 479-80 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Accordingly, Plaintiffs' counsel requests that the Court grant preliminary approval of an award of $96,000.00, inclusive of all past and anticipated future attorneys' fees and litigation costs, which represents $33^{1}/_{3}\%$ of the Maximum Settlement Amount.

## CONCLUSION

While the Parties believe the settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the settlement, the benefits to be received by Class Members, and Plaintiffs' counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-36 (3d ed. 2001).

For the reasons set forth above, the Parties respectfully request that the Court grant their Motion for Preliminary Approval of Class and Collective Action Settlement and enter the Proposed Order, attached as Exhibit B.

Dated: June 19, 2018                  Respectfully Submitted,

                                      */s/ James B. Zouras*

                                      James B. Zouras
                                      Ryan F. Stephan
                                      Teresa M. Becvar
                                      Stephan Zouras, LLP
                                      205 North Michigan Avenue

Suite 2560
Chicago, IL 60601
312.233.1550
lawyers@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Molly A. Arranz*

Molly A. Arranz
Sara S. Zorich
SmithAmundsen LLC
150 N. Michigan Ave.,
Suite 3300
Chicago, Illinois 60601
312.894.3200
marranz@salawus.com
szorich@salawus.com

**ATTORNEYS FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on June 19, 2018, I filed the attached with the Clerk of

the Court using the electronic filing system which will send such filing to all attorneys of record.


    */s/ James B. Zouras*