## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **APRYL IVY, on behalf of herself, individually,** | **)** | |
| **and on behalf of all others** | **)** | |
| **similarly situated,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | **Case No. 1:16-cv-7606** |
| | **)** | |
| **v.** | **)** | **Judge Ronald A. Guzman** |
| | **)** | |
| **ADVENTIST MIDWEST HEALTH, an Illinois** | **)** | **Magistrate Judge Jeffrey T. Gilbert** |
| **Non-Profit Corporation, d/b/a ADVENTIST** | **)** | |
| **HEALTH CARE AT HOME,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## JOINT MOTION FOR FINAL APPROVAL
## OF CLASS AND COLLECTIVE ACTION SETTLEMENT

| **CLASS COUNSEL:** | **ATTORNEYS FOR DEFENDANT:** |
|---|---|
| James B. Zouras | Molly A. Arranz |
| Ryan F. Stephan | Sara S. Zorich |
| Teresa M. Becvar | SMITHAMUNDSEN LLC |
| STEPHAN ZOURAS, LLP | 150 N. Michigan Ave., |
| 100 North Riverside Plaza | Suite 3300 |
| Suite 2150 | Chicago, Illinois 60601 |
| Chicago, Illinois 60606 | 312.894.3200 |
| 312.233.1550 | marranz@salawus.com |
| lawyers@stephanzouras.com | szorich@salawus.com |

## <u>INTRODUCTION</u>

Plaintiff and Class Representative Apryl Ivy ("Named Plaintiff"), individually and on behalf of a class certified for settlement purposes (collectively "Plaintiffs" or "Class Members"), and Defendant Adventist Midwest Health d/b/a Adventist Health Care at Home ("Adventist") (together with Plaintiffs, the "Parties"), by and through their undersigned counsel, move for final approval of the Parties' settlement of Plaintiffs' claims that they were misclassified as exempt from overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. The Parties' settlement of this hybrid FLSA collective action and IMWL Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A, including the releases of claims as set forth therein; and (2) enter the proposed Final Approval Order and Final Judgment, attached as Exhibit B.

On July 9, 2018, the Court took the first step in the settlement approval process by preliminarily approving the Parties' class and collective action settlement; certifying the proposed "Settlement Class" (defined below) under Rule 23; appointing the attorneys from Stephan Zouras, LLP as Class Counsel; appointing Dahl Administration ("Settlement Administrator") as Settlement Administrator; appointing Named Plaintiff Apryl Ivy as Class Representative; authorizing the Settlement Administrator to mail notice to the Class Members; and setting a date for the Final Approval Hearing. (ECF No. 139.)

Class members have been notified of the terms of the settlement, including the monetary relief, the allocation formula, and their right to participate in, object to, or opt out of settlement.

Ex. C, Affidavit of Kelly Kratz Regarding Notice and Settlement Administrative Activities Completed as of October 4, 2018 ("Admin. Aff.") ¶¶ 4-7; *see also* Ex. A to Admin. Aff. (Notice Packet). To date, no Class Members have objected to the settlement and only one opted out of the settlement. Ex. C, Admin. Aff. ¶¶ 8-9; Ex. D, Declaration of James B. Zouras ("Zouras Decl.") ¶ 9. With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement ("Preliminary Approval Motion") (ECF No. 132), the initial Named Plaintiff, Ryan Smith, alleged that he and other home health registered nurses, physical therapists, occupational therapists, and speech pathologists (collectively, "Clinicians") were misclassified by Adventist as exempt from the overtime requirements of the FLSA and IMWL. Ryan Smith alleged that as a result of their misclassification, Clinicians were deprived of overtime wages in violation of federal and state wage law. He sought to represent himself and similarly situated Clinicians as a collective action under the FLSA and a class action under the IMWL and Federal Rule of Civil Procedure 23.

On April 28, 2017, Ryan Smith filed a motion to certify a class and collective of Clinicians, which this Court recommended should be granted. (ECF No. 89, 114.) On February 20, 2018, Judge Guzman sustained Adventist's objections to the Report and Recommendation and denied the motion, without prejudice, finding Ryan Smith was not an adequate representative. (ECF No. 119.) Thereafter, the Court granted Plaintiffs leave to amend their lawsuit to substitute opt-in Plaintiff Apryl Ivy as Named Plaintiff, and Plaintiffs filed their Amended Collective and Class Action Complaint on March 1, 2018. (ECF No. 123.) Ryan Smith

is no longer a Named Plaintiff, but because he timely filed an opt-in consent form to join the FLSA collective action, he is an opt-in Plaintiff ("Opt-In Plaintiff").

The Parties conducted extensive investigation and case analysis including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories; (c) the exchange of over 16,000 pages of written discovery, including voluminous production of emails and other electronically stored information ("ESI") in the form of pay data and home visit data from Adventist's electronic medical record software; (d) the depositions of Ryan Smith and three of his family members; (e) the depositions of four management representatives from Adventist; (f) data analyses by Plaintiffs' undisclosed expert; (g) the review of Adventist's written policies and procedures; and (h) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Ex. D, Zouras Decl. ¶ 6.

On March 7, 2018, the Parties attended a day-long mediation overseen by a private mediator, the Honorable James Holderman (Ret.), during the course of which the parties negotiated at arm's length and in good faith and were able to reach a class action settlement in principle which is memorialized in the formal Settlement Agreement executed in full on June 19, 2018. Ex. D, Zouras Decl. ¶ 7. This settlement provided for substantial monetary relief for 71 Class Members, inclusive of the Named Plaintiff and Opt-In Plaintiff. *Id.* ¶ 8. The Class is defined as "any individual (inclusive of the Named Plaintiff) employed by Adventist Midwest Health as a home health Clinician in Illinois during the period July 27, 2013 through June 19, 2018, who were classified as exempt and were allegedly not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks." Ex. A, Settlement Agreement ¶ G.

On June 19, 2018, the Parties filed the Preliminary Approval Motion requesting, among

other relief, that the Court grant preliminary approval of the Settlement Agreement and certify an FLSA collective action and Rule 23 class for settlement purposes. (ECF No. 132.) On July 9, 2018, the Court granted preliminary approval of the Parties' proposed settlement; certified the Settlement Class; appointed Stephan Zouras, LLP as Class Counsel; appointed the Named Plaintiff as Class Representative; directed that notice be mailed; and set a date for a final approval hearing. (ECF No. 139.)

## II.    SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendant. Ex. D, Zouras Decl. ¶ 15.

### A.    The Settlement Fund

The Settlement Agreement provides that Defendant will pay a Maximum Settlement Amount of $288,000.00. Ex. A, Settlement Agreement ¶ R. The Maximum Settlement Amount covers: (1) Class Counsel's Fee Award; (2) Class Counsel's Expense Award; (3) the Settlement Administrator's Administrative Fees; (4) all payments to Class Members; (5) a Service Payment to the Named Plaintiff; and (6) a Service Payment to Opt-In Plaintiff. *Id*. All unclaimed funds remaining in the Maximum Settlement Amount after distribution, arising either from funds not claimed by the Settlement Class or from uncashed checks, will be returned to Adventist. *Id*. ¶ 55.

### B.    Eligible Class Members

Class Members eligible to receive a settlement payment are all individuals employed by Adventist Midwest Health as home health Clinicians in Illinois during the period July 27, 2013 through June 19, 2018, who were classified as exempt and were allegedly not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks. Ex. A,

Settlement Agreement ¶ G.

### C. Releases

The Settlement Agreement provides that the Class Members who did not validly and timely request exclusion from the Settlement, regardless of whether they submitted a Claim Form, release their state, local, and common law wage and hour claims, including without limitation all claims for relief under the IMWL. Ex. A, Settlement Agreement ¶ 58. In addition, all Class Members who cash or otherwise negotiate their settlement check consent to join (i.e., opt into) the FLSA collective action and will thereby release their federal wage and hour claims. *Id*. In addition to the Class Member releases, the Named Plaintiff and Opt-In Plaintiff will generally release all claims they have or may have had against Defendant in the event the Court approves Service Payments to them. *Id*. ¶ 59.

### D. Allocation Formula

The Remaining Settlement Amount of $161,000.00, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and service payments, was allocated proportionately among the Class Members based on their employee pay records and weekly productivity data (i.e. weekly Weighted Visit Equivalents or "WVEs") provided by Adventist for the class period. Ex. A, Settlement Agreement ¶ 26. Every Class Member was eligible for a $250.00 minimum payment, plus an additional allocation based on the date the Class Member's alleged claim accrued. *Id*. For claims accruing from March 7, 2015 to the present, each Class Member who did not opt out will automatically receive a payment (the "Guaranteed Payment Amount"). *Id*. Each Class Member who submitted a Claim Form will receive a payment for claims accruing from July 27, 2013 through March 6, 2015, as applicable (the "Claim Payment Amount"). *Id*. The allocation method provided compensation for over 7,300 workweeks of for 71

Class Members (including the Named Plaintiff and Opt-In Plaintiff) during a class period spanning nearly five years and resulted in an average settlement allocation of more than $2,250.00 per Class Member. Ex. D, Zouras Decl. ¶ 8.

      **E.**      **Service Payments, Attorneys' Fees, and Settlement Administration Expenses**

Contemporaneous with this Motion, Plaintiffs will apply for Court approval, and Defendant will not oppose, distribution of Service Payments of $6,500.00 to the Named Plaintiff and $2,000.00 to the Opt-In Plaintiff to be paid out of the Maximum Settlement Amount. Ex. A, Settlement Agreement ¶ 45. In addition, Class Counsel will petition the Court, unopposed, for approval of an award of attorneys' fees and costs of $33^{1}/_{3}\%$ of the Maximum Settlement Amount (or $96,000.00), an Expense Award of reasonable litigation costs of $15,000.00, and Administrative Fees of $6,682.00. *Id.*; Ex. C, Admin. Decl. ¶ 11. Class Counsel submits, and Defendant does not dispute, that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

      **F.**      **Settlement Administration**

On July 27, 2018, the Settlement Administrator mailed the Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice"), Claim Form, and Election to Opt Out and Be Excluded from the Settlement and Class Action Form, (collectively, the "Notice Packet") to 71 Class Members. Ex. C, Admin. Aff. ¶¶ 3, 6. No Notice Packets were returned by USPS with undeliverable addresses. *Id.* ¶ 7.

      **G.**      **Claims, Objections, and Opt-Outs**

The deadline to submit a Claim Form, object, or opt out of the settlement was September 25, 2018. Ex. C, Admin. Aff. ¶ 6. This deadline has now passed. Only one Class Member

requested exclusion, and no Class Member objected to the settlement. *Id.* ¶¶ 8-9. In addition, the Settlement Administrator received 38 valid non-duplicate Claim Forms from Class Members. *Id.* ¶ 10. As a result, as of the close of the notice and claim period, $152,067.10, or 94% of the $161,000.00 in total available settlement funds, is designated to be distributed in individual settlement payments to the 70 Class Members who did not opt out of the settlement. Ex. D, Zouras Decl. ¶ 10.

## III.   THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id*. Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. As set forth in Section II.F above, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B).

## IV.   THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' FLSA AND IMWL CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement the court should consider the

judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of the FLSA and IMWL and thus should be approved.

### A. The Settlement Is Fair, Reasonable and Adequate.

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity,

length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

Additionally, courts have construed the FLSA as requiring approval of a settlement that would release FLSA claims. When a court evaluates an FLSA settlement, its review "requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted).[1] When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789 at *9 n.9 (citations omitted). All of these factors weigh in favor of final approval.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

Defendant agreed to settle this case for a maximum of $288,000.00 for a class of 71 Clinicians. Ex. A, Settlement Agreement ¶ R. The Maximum Settlement Amount covers: (1)

---

[1]     Likewise, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor).

Class Counsel's Fee Award; (2) Class Counsel's Expense Award; (3) the Settlement Administrator's Administrative Fees; (4) all payments to Class Members; (5) a Service Payment to the Named Plaintiff; and (6) a Service Payment to Opt-In Plaintiff. *Id*. After the close of the notice and claim period, $152,067.10, or 94% of the $161,000.00 in total available settlement funds, is designated to be distributed in individual settlement payments to the 70 Class Members who did not opt out of the settlement. Ex. D, Zouras Decl. ¶ 10.[2] This is a substantial settlement that represents significant value, particularly given the attendant risks of litigating the merits of the case through FLSA and Rule 23 class certification, summary judgment practice and/or trial, and any appeals of decisions on those matters. Ex. D, Zouras Decl. ¶ 14.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

---

[2] The $8,932.90 in unclaimed funds will remain with Adventist. Ex. D, Zouras Decl. ¶ 11. Thus, when Adventist funds the settlement, estimated to occur on or about November 9, 2018, Adventist will fund a total amount of $279,067.10 which is the $288,000 Maximum Settlement Amount minus the unclaimed funds. Adventist will separately fund the employer's portion of the payroll taxes estimated to be funded on or about November 23, 2018.

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendant's defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendant's "salary plus" compensation plan fails to meet the salary basis test under the FLSA. No courts have addressed this precise issue, and the ones that have addressed similar issues are non-precedential in this district. *See Hicks v. Great Lakes Home Health Servs.*, No. 17-CV-12674, 2018 WL 2363959, at *4 (E.D. Mich. May 24, 2018) (granting partial summary judgment for home care clinician on the grounds that a hybrid fee and hourly basis pay-plan does not satisfy the requirements for exemption under the FLSA); *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting partial summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home Care Servs*., 276 F.3d 832, 838-39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task). Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether the Named Plaintiff and the Class Members could credibly establish the hours of overtime they worked, if any, and the weeks in which they worked overtime. Further, Plaintiffs would have to overcome arguments that the fluctuating workweek method of calculating overtime premiums (FWW), which results an overtime

multiplier of .5 times (rather than 1.5 times) the regular hourly rate, should apply. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08 Civ. 5802, 2011 WL 248448, at *3 (N.D. Ill. Jan. 26, 2011) (holding that the FWW method of calculating overtime premiums for salaried employees using a half-time rate applied to the plaintiffs' misclassification claims).

Here, the settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Depending on whether the FWW method of calculating overtime is applied, which remains an undecided question, Class Counsel estimate that the settlement amount distributed directly to the class represents as much as nearly 75% of their maximum potential claims for overtime wages, exclusive of liquidated and other damages under the FLSA and IMWL. Ex. D, Zouras Decl. ¶ 12. This is well within the range of reasonable recovery for the class and represents significant value given the attendant risks of litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The proposed settlement thus ensures that the Class Members who wish to participate in the settlement will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. In light of the substantial recovery this settlement provides, and the attendant risks of litigation, this factor therefore weighs in favor of final approval.

> **2.      Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).**

The second factor to be considered is the complexity, length, and expense of litigation

that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

Here, further litigation would certainly result in a second round of briefing on Rule 23 class and FLSA collective action certification and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, on liability and damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

3.      **The Reaction of the Class Has Been Positive (Third Factor).**

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). Here, no class members objected to the settlement and only one has requested exclusion. Ex. C, Admin Aff. ¶¶ 8-9. Thus, this factor also favors approval of the settlement.

4.      **Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).**

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. The settlement was reached after intense negotiation with the dedicated assistance and oversight of an experienced and well-respected private mediator, the Honorable James Holderman (Ret.).

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions, particularly wage and hour class actions of exactly this kind, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Ex. D, Zouras Decl. ¶¶ 4-5, 14; *see also, e.g.*, *Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015). Using that litigation experience and their intimate knowledge of the facts of

the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. Ex. D, Zouras Decl. ¶ 14.

Defendant's counsel also agree this settlement is fair and reasonable, as evidenced by their execution of the Settlement Agreement. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex hybrid class and collective action was resolved nearly two years after it was initiated. This period involved extensive discovery, including research, analysis, investigation, the exchange of over 16,000 pages of written discovery, including voluminous production of emails and other ESI in the form of pay data and home visit data from Adventist's electronic medical record software, eight depositions, and extensive motion practice, including Rule 23 and FLSA class certification practice, among other things. *See* Ex. D, Zouras Decl. ¶ 6. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. *Id.* at ¶ 14. Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this fifth, and final, factor favors final approval of the settlement.

### B. Approval of the Release of Claims is Appropriate

The Parties also request that the Court specifically approve the release of Class Members' federal and state wage and hour claims and the general release of the Named Plaintiff and Opt-In Plaintiff's claims, as defined in the Settlement Agreement. Ex. A, Settlement Agreement ¶¶ 58-59. In this case, as explained above, the terms of the settlement were reached

15

during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, and analysis. Because the Settlement Agreement, including Class Members' releases of their federal and state wage and hour claims and the Named Plaintiff and Opt-In Plaintiff's general release of claims, resolves a bona fide dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014).

## <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court grant their Joint Motion for Final Approval of Class and Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached as Exhibit B.

Dated: October 18, 2018                    Respectfully Submitted,

*/s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
Stephan Zouras, LLP
100 North Riverside Plaza
Suite 2150
Chicago, IL 60606
312.233.1550
lawyers@stephanzouras.com

**CLASS COUNSEL**

16

*/s/ Molly A. Arranz*

Molly A. Arranz
Sara S. Zorich
SmithAmundsen LLC
150 N. Michigan Ave.,
Suite 3300
Chicago, Illinois 60601
312.894.3200
marranz@salawus.com
szorich@salawus.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on October 18, 2018, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.


_/s/ James B. Zouras_____